## NOBLE HEATH V. THE STATE.

No. 23996. Delivered April 28, 1948.

*Lincoln, Kennedy & Glover*, of Texarkana, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

The morning of Monday, July 7, 1947, three young men while fishing along Wagoner Creek in Bowie County, discovered the dead body of appellant's wife in the water about six feet from the bank of the creek. Officers were notified and the body was taken from the water. Death had resulted from a blow inflicted on the mouth, or lips, with a blunt instrument of some character, causing a basilar fracture and concussion. Other bruises appeared on the body in the region of the groin and right

shoulder blade. The body was partially clothed—that is, portions of the outer and under garments had been torn away. Upon the feet were shoes with high heels. A watch on the wrist had stopped at 10:27 o'clock.

Appellant appeals from a conviction of the murder of his wife, with punishment assessed at five years' confinement in the penitentiary. The sufficiency of the evidence to support the conviction is challenged.

Appellant and deceased had been married about eight years, during which there had been numerous separations and reconciliations, the last of which occurred about a week prior to her death. There was testimony showing that about a month prior to her death appellant struck deceased with his fist and that, about four and a half years previously, he had attacked her and cut her with a knife and stated, "I will kill that son of a bitch."

About eight o'clock the evening of Sunday, July 6, 1947, appellant, deceased, and Walton, a neighbor who lived about a block from them, left in appellant's truck to drink some beer. Some three different places were visited, at each of which beer was consumed. They returned about ten o'clock, leaving Walton at his home. As they drove away, deceased expressed a desire for more beer.

According to the witness Walton and his wife the deceased and appellant appeared friendly, with no sign of ill-feeling between them.

What happened thereafter is reflected in appellant's statement which was introduced by the State. After the formal parts it reads as follows:

"On Sunday night in company with Lucious Walters and my wife, I went to 'Grants Place' at Apple St. and 9th St. We all drank beer there. This was after 8:00 P. M. Then we went to Stewarts Place about 5 miles west on Highway #67 and all drank beer. From Stewarts we all went to 'Jacks Place' on Highway #67 just west of T & P dump and all drank beer there. We left Jacks Place and went to Lucious Walters home at 169 Stevens Court and got there around 9:30 P. M. We all got out of the car and went into Lucious Walters house and stayed there about 10 minutes. My wife and I then drove to 'Dans Place' between Apple and Peach Streets on 11 st. We sat in truck in front of this place about 5 minutes. We then drove

car to highway 67 and traveled west until we came to Wake Village road and we turned right and went thru Wake Village to old Red Water Road and turned east towards Texarkana. When we reached Wagoners Creek bottoms, my wife asked me to stop the car, that she wanted to get out. I stopped and let her out before we crossed either of the two bridges and she started running down middle of road towards Texarkana. I started after her in the car and when I caught up with her, she left the road and crawled thru a barb wire fence on south side of road. I stopped the car and got over the fence and walked out into the field and called her two or three times. She called back to me that she was going to spend the night in the field. I went back to the car and sat in it about 5 minutes and then went home to 203 Stevens Courts. I got home about 10:30 P. M. I went ot sleep and woke up at 7:30 Monday morning and went to work as usual. I got home at 6:30 P. M. and had not left when the officers came and arrested me. I did not return to the scene where my wife ran away from me the night before at any time afterwards. I did not notify anyone that my wife was missing."

The witness Davis saw appellant at a cafe and beer parlor between 11 and 12 o'clock Sunday night. He was alone. Upon being invited to have a beer appellant replied, "No, Junior, I am in a hurry." Appellant's truck was parked outside the cafe.

According to the testimony of the father of appellant who lived with him and deceased, appellant returned home, alone, about 11 o'clock Sunday night and went immediately to his room, undressed, and went to bed. The father followed him to the room and to the remark, "Boy, you are taking it easy," received no reply.

The next day, or Monday, appellant reported for work and worked that day. He was arrested that night at his home.

We revert, now, to a statement of the facts surrounding the finding of the body.

At a point in the public road something like 200 yards from where the body was found, the officers saw tracks of a man and a woman leading from the road across a barrow pit into a field where they found the hat of deceased. Farther on they found a part of the skirt or dress of the deceased on a wire fence and from that point to another fence they found a portion of the slip of deceased. From the road to the last fence they were able

to distinguish tracks of a man and a woman. However, from the last fence to the creek no tracks were discovered. There was evidence of a "scuffle" having occurred in the field but none where the body was found. From the fence where the dress was found to the last fence there was evidence of something having been dragged. Although searched for, no traces of blood were found. The pasture was heavy grass land while that around the creek was dry and hard, which facts probably account for the absence of any description of tracks so found, other than that they were made by a woman and a man. There is an absence of any testimony that any track found was of a size comparable to that of, or made by the appellant or deceased.

As to the identity of the tracks as having been made by appellant and deceased, the State relies upon the statement of appellant.

No blood stains were found on any of the clothing of appellant.

Appellant did not testify. He offered testimony showing that deceased was a nervous woman, given to excess drinking of coffee and intoxicants and that it was not uncommon for her to leave appellant for days at a time.

The owner of the pasture, whose house was about 200 feet from the point where the dress of deceased was found, testified that he was at home Sunday night and at no time did he hear any one calling, "Mary, Mary," or a woman shouting, "I am staying all night," as claimed by appellant in his statement.

If we correctly understand this record, it is the State's contention that the facts stated authorize the jury's conclusion of guilt upon the theory that appellant drove the deceased to the point in the road where the tracks were found; that deceased, to escape or get away from appellant, fled into the pasture, with appellant pursuing her; that she lost her hat and ran into a fence, where she tore off a part of her skirt; that appellant overtook her and there killed her by striking her with some blunt instrument and then dragged her body through the last fence, where a part of the slip was found, and threw the body into the creek.

The sufficiency of the evidence to support such a conclusion is extremely doubtful. However, in view of the question here-

after discussed, we deem it unnecessary at this time to determine that question.

It will be noted that to place the appellant at the scene of the alleged crime, the State depended upon appellant's statement, or confession, alone. There is no testimony showing that he was in that vicinity, save and except as stated by him in the confession. It cannot be said, therefore, that the State did not rely upon appellant's confession, alone, to connect him with the alleged murder. The confession contained statements which exculpated appellant from any guilty connection with the death of his wife. In introducing the confession and exculpatory statements contained therein, the State was bound by them until the falsity thereof had been shown by other testimony.

In submitting this case to the jury upon the law of circumstantial evidence, the learned trial court failed to instruct the jury in accordance with the rule of law stated. Appellant timely excepted to the charge for such failure.

Under the facts here presented, the conclusion is reached that, in failing to respond to said exception, the trial court fell into error. 18 Tex. Jur., p. 27, Sec. 13; Branch's P. C., Sec. 73; Otts v. State, 135 Tex. Cr. R. 28, 116 S. W. (2d) 1084, 116 A. L. R. 1454; McDaniel v. State, 161 S. W. (2d) 1064, 144 Tex. Cr. R. 168.

In reaching this conclusion we are not unmindful of the fact that the rule mentioned is not invariable and that exceptions exist to its application, such as cases where the exculpatory features of a confession are raised by other testimony and affirmatively submitted as defensive matters from the standpoint of the accused, or where the State does not rely upon the confession, alone, to establish the guilt of the accused.

In the instant case, neither of the exceptions mentioned are here shown, for here the State did rely upon the confession, alone, to establish appellant's guilt and no affirmative defensive charge was given in line with the exculpatory features of the statement.

In view of another trial, we discuss certain other questions raised by record.

We fail to see wherein the pictures taken of the body of the deceased, while in and just after it had been removed from the

water, were admissible or tended to solve any issue in the case. Under the record here presented, appellant's objection should have been sustained.

If the State elects to further prosecute appellant for the murder of his wife, it is suggested that it be done under a new indictment alleging that the means used was a blunt instrument of some character to the grand jurors unknown, in keeping with the testimony of the doctor who examined the body of deceased—thereby eliminating the attack that is made against the instant indictment.

For the error in the charge, as pointed out, the judgment is reversed and the cause remanded.

Opinion approved by the Court.